[S. F. No. 15397. In Bank.—September 26, 1935.]

JULIET McCLERKIN (an Infant), etc., Respondent, v. SAN MATEO SCHOOL DISTRICT, etc., et al., Appellants.

Gilbert D. Ferrell, District Attorney, and D. E. Sullivan, Assistant District Attorney, for Appellants.

Bronson, Bronson & Slavin for Respondent.

SHENK, J.—The plaintiff, a minor, resides in Baywood in San Mateo County. Baywood is within the territorial confines of San Mateo School District, which is an elementary school district. During the four years prior to the commencement of the action, the plaintiff attended the elementary school in Hillsborough School District, also in San Mateo County.

About twenty other children who reside in Baywood in San Mateo School District attended the elementary school in Hillsborough School District prior to the commencement of the action. The attendance of such children at the latter school was with the consent of the trustees of Hillsborough School District, but without the consent of the trustees of San Mateo School District. In January, 1934, the trustees of San Mateo School District withheld their consent to the attendance at the Hillsborough school of the children residing in Baywood, and contended that the attendance of the children at the Hillsborough school without their consent should not deprive the San Mateo School District of its apportionment of moneys from the state school fund based upon the school attendance of such children. This action was brought by the plaintiff on behalf of herself and said twenty other children against San Mateo School District, Hillsborough School District, and Pansy Jewett Abbott, as superintendent of schools of San Mateo County, for a declaration of the rights and duties of all the parties. The trial court held that the children were entitled to attend the Hillsborough school with the consent of the trustees of Hillsborough School District and the consent of the county superintendent of schools of San Mateo County; that the consent of the trustees of San Mateo School District was unnecessary, and that when the attendance of such children at the Hillsborough school was with the consent of the trustees of Hillsborough School District and of the San Mateo County superintendent of schools, San Mateo School District was not entitled to credit for apportionment of any funds allotted to Hillsborough School District out of the state school fund by virtue of the attendance of such children at the Hillsborough school. Judgment was entered accordingly. The defendants, with the exception of Hillsborough School District, have appealed.

For the purpose of submitting the issues to the trial court it was stipulated that the defendant county superintendent of schools gave her consent to the attendance of the children at the Hillsborough school. Two questions only are now presented. First, whether the consent of the trustees of San Mateo School District is a requirement before the children residing in that district may attend a school in another district; and secondly, whether the school district of attendance

may receive and retain moneys payable out of the state school fund based upon the attendance of such nonresident pupils.

Those questions depend for their answer upon the interpretation of the applicable sections of the statutory law. Section 2.20 of the School Code (chap. 23, Stats. 1929), provides: ''One school district may perform school services for another school district or districts, and receive pay from the other school district for the performance of such school service whenever a contract approved by the county superintendent of schools covering the performance of such school service and the payment therefor has been entered into by and between the governing boards of the two school districts concerned. . . . '' Section 2.21 (chap. 63, Stats. 1929), reads: ''The attendance of pupils from a school district of any type and class which has contracted to have its children educated by another school district, as provided elsewhere in this code, shall be kept separate, and shall be credited to the district in which such pupils reside.'' By the provisions of section 1 of chapter 63, sections 2.20 and 2.21 comprise Article II, of chapter 1, Part I, Div. II, of the School Code, on the subject of Administrative Organization. Article II treats of ''Performance of Services by One District for Another District.''

There was no contract entered into between the districts here involved. In the absence of any power or privilege directly conferred on one district to educate children resident in another district, the consent of the district of residence would seem to be a prerequisite before it may be said to have released its right to benefits to which it otherwise would become entitled. ''System of Public Instruction'' is the subject-matter of Division III of the School Code. Part II thereof and chapter II of that part, contain provisions affecting ''Elementary Schools''. Article III of chapter II is on the subject of ''Admission''. Prior to 1933, section 3.174, contained within that article, provided: ''Boards of trustees and city boards of education shall have power, and it shall be their duty to permit children from other districts to attend the schools of their district. Should they refuse to grant such permission, the parents or guardians of the children may appeal to the county superintendent of schools and his decision shall be final and binding on both boards of trustees.'' In 1933 (Stats. 1933, p. 577), said section 3.174 was amended to read as follows: ''Boards of trustees and city boards of education shall

have power to permit children from other districts to attend the schools of their district. No pupil shall attend school in a district other than that in which he resides without first obtaining the consent of the county superintendent of schools having jurisdiction over the district in which such pupil resides." It thus appears that prior to 1933 it was made the duty of the board of trustees of one district to permit children from another district to attend its schools, and a decision of the superintendent of schools was necessary only in case of a refusal of the receiving district. Since the amendment in 1933, and at the time this controversy arose, boards of trustees were vested simply with the power to permit children from another district to attend their schools, without imposing upon them the duty to permit such attendance. At the same time the consent of the county superintendent of schools having jurisdiction of the district of residence was made a prerequisite. There is no specific requirement in the code that attendance in one district of children residing in another district, when it is pursuant to section 3.174, shall be credited to the district of residence. The provisions of section 2.21 expressly refer solely to section 2.20, and can have no necessary implied relationship to section 3.174. Whatever doubt may have surrounded this question prior to the amendment of section 3.174 in 1933, by reason of the then duty imposed on the district of attendance, does not now obtain. It seems clear that said amendment was intended to remove any such doubt. There is no express provision in the chapters of the School Code dealing with the apportionment of the state school fund to elementary school districts (Stats. 1931, p. 2514, as amended Stats. 1933, p. 2702), which differentiates between attendance of nonresident and resident pupils, and in the absence of a contract between the districts, we find no other provision from which it may readily be implied that the district of attendance is not entitled to credit for the attendance of pupils from another district. That attendance must be with the consent of the county superintendent of schools having jurisdiction of the school district of residence, and the consent of the board of trustees of the latter district is not required. Whether such consent should be required is a matter of legislative policy. The law as enacted determines the policy and necessarily governs. It was apparently considered by the legislature that the interests of the school district of residence

were safeguarded if in all cases the decision be made by the county superintendent of schools under whose jurisdiction it operated. If the county superintendent of schools deemed it wise or expedient that the districts enter into the contract contemplated by section 2.20 of the School Code, and that state aid in such a case be subject to division in accordance with a contract which would receive his approval, he could properly withhold his consent. The requirement of his consent, in the absence of such a contract, would necessarily result in according to the district of attendance the benefit of state aid based on such attendance.

The judgment is affirmed.

Thompson, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.